Samuel H. Hofstadter, J.
The executors of the will of a deceased trustee under a declaration of trust apply for the judicial settlement of the deceased trustee’s final account. The account, as orignally filed covered the period from the inception of the trust on July 1, 1941, to October 31, 1956, and a supplemental account covers the period from October 31, 1956, to March 1, 1958. Objections made by the special guardian to certain items require decision.
The declaration of trust recited that the trustee had received from the donor, then deceased, and since the donor’s death, from his executors, sums of money and might receive further sums from the executors, which under a “ private agreement ’•’ with the donor were to be dealt with as a trust fund. The income of the trust was to be paid to a named beneficiary for life and on her death the principal was to be paid to the trustee or, if he were dead, to his surviving issue per stirpes, or, in default of such issue, to the trustee’s executors. The declaration contains the following significant provision, on whose interpretation the disposition of the objections largely hinges: “ The Trustee in his absolute discretion may pay to the beneficiary out of principal an amount sufficient with the income to make the total payments to her equal to two hundred dollars ($200.00) per month, but he shall be under no obligation to do so.” In the declaration the trustee waived all commissions “ both on the receipt and payment of principal and income of this trust.” Aside from the statement in the petitioners’ brief that the trustee was a mutual friend of the deceased donor and of the life beneficiary, the entire text of the declaration of trust seems to indicate that the trust was undertaken in token of friendship. Under the trustee’s judicious administration the principal of the trust was increased substantially; in fact, it has doubled in amount.
The guardian in a painstaking report objects to two transfers from principal to income and recommends that the trustee’s estate be surcharged with this sum. The objections rest on the ground that when each of the transfers was made there was sufficient income on hand or in anticipation to render the invasion of principal unnecessary, whether such available income is treated on a calendar or on a fiscal year basis. The review of the figures made in the guardian’s report tends to support his conclusion.
One transfer of $2,992.23 from principal to income was made on September 2, 1943; the other amounting to $1,163.15 was made on December 19, 1949. The aggregate of these transfers is *750 $4,155.38. The petitioners’ brief makes a detailed analysis of the income account, too lengthy to be set out here, which shows exactly how the amount of each of the two transfers was arrived at on the dates when made; this analysis demonstrates the basis of the transfers. The difference between this result and that reached by the guardian is due to the difference in the method adopted. The guardian proceeded on an annual basis while the trustee maintained a running account based on the actual cash available from time to time for payment of income.
The language of the declaration must be read in its setting. We may not overlook the relation of the parties or the trustee’s disinterestedness. Not alone was he discharging his duties without compensation, but the transfer of principal to income operated to his own prejudice, for it reduced the amount of principal payable to him as the primary contingent remainderman. His issue and his estate were the secondary remaindermen. The declaration authorized the payment to the beneficiary of $200 per month, not $2,400 per year. In the light of all these circumstances, it cannot be said that the trustee went beyond the area of his permissible discretion when he pursued the method of accounting and computation which led him to make the transfers under attack. The imposition of a surcharge on the trustee’s estate for applying to the use of the life beneficiary moneys which the trustee might have saved for himself or his children would not be fit appreciation of his labors and would surely do violence to the donor’s wishes. Accordingly, I hold the trustee’s estate is not subject to surcharge and dismiss the objections made to the transfers.
The guardian objects further to the inclusion in the income account of $1,500, as part of an outstanding loan made by the trust. The guardian nrges that this $1,500, consisting of $1,000 and $500 was taken from principal, not income, and should be restored to principal. The guardian has not overcome the account itself, as analyzed by the petitioners, from which it appears that at the time of the two loans totalling $1,500 there was available enough cash to make the loans and that they were in fact made out of income. This objection is dismissed.
An item of $284.56 for payment of the life beneficiary’s income taxes is charged to principal. The trustee argues for a surcharge of this item, on the ground that payment was not made to the taxing authorities but to the beneficiary and it is not shown how the money was spent by the beneficiary. There is no suggestion that this money did not actually reach the beneficiary; if the charge against principal was erroneous, the return to principal of the amount by proper bookkeeping transfer would fully meet *751 the needs of the situation. I assume that the, item should indeed have been charged against income. However, since 1952 custodian’s fees in the sum of $593.50 were charged against income, though they could properly have been paid out of principal. The guardian recognizes this in his approval of the charge of the same item against principal in earlier years. In the circumstances, the improper charge, if any, of $284.56 against principal is more than offset by the charge of $593.50 against income. The account should, therefore, not be disturbed in this respect and the objection is dismissed.
The foregoing are the only items in the account to which the guardian has objected. Since the objections have been dismissed, it follows that the account and supplemental account should be settled and approved as filed.
One further matter remains for discussion. By the declaration of trust the trustee pursuant to the private agreement already mentioned appointed the Continental Bank & Trust Company of New York (Continental) his successor trustee with all the powers given to him by the declaration, in the event of his own death, disability or resignation. The trustee died on August 1, 1953. On that date Continental was no longer functioning as a trust company. On May 1, 1948, substantially all its business and assets were acquired by the Chemical Bank & Trust Company, which thereafter succeeded to much of the trust business which Continental had previously performed. In 1954 the Corn Exchange Bank & Trust Company was merged into the Chemical Bank & Trust Company and the name of that bank changed to its present name, Chemical Corn Exchange Bank (Chemical). Continental was voluntarily liquidated; its liquidation began on May 1, 1949, and the Chemical Bank & Trust Company was appointed its distribution agent. The petitioners request the court to appoint Chemical as successor trustee of the present trust.
It is clear, as the special guardian points out in his report, that Chemical is in no sense the successor in law of Continental, for there was no merger or other legal union of the two corporations. Each was and remained a separate legal entity. Therefore, Chemical does not succeed Continental as trustee, as of right, pursuant to the terms of the trust instrument appointing Continental successor trustee. It follows that the trust vests in the court which must appoint a person to execute the same pursuant to section 20 of the Personal Property Law. The court is not persuaded that this trust can best be administered by a bank and will appoint an individual in the order, which will also fix the allowances. Settle order.